# EXHIBIT D

US009575973B2

# (12) United States Patent
McCarty et al.

(10) Patent No.: US 9,575,973 B2
(45) Date of Patent: Feb. 21, 2017

(54) **SYSTEM AND METHOD FOR SYSTEMATICALLY REMOVING CUSTOMER PERSONAL INFORMATION FROM AN ELECTRONIC DEVICE**

(75) Inventors: **Joel McCarty**, Edmond, OK (US); **Russell Hamlin**, Saginaw, TX (US); **Jun Xu**, Flower Mound, TX (US); **Scott Wittrock**, Flower Mound, TX (US)

(73) Assignee: **ATC Logistics & Electronics, Inc.**, Fort Worth, TX (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 511 days.

(21) Appl. No.: **13/587,570**

(22) Filed: **Aug. 16, 2012**

(65) **Prior Publication Data**

US 2012/0311717 A1 Dec. 6, 2012

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 12/940,331, filed on Nov. 5, 2010.

(51) **Int. Cl.**
***G06F 17/30*** (2006.01)
***G06Q 10/08*** (2012.01)

(52) **U.S. Cl.**
CPC ......... ***G06F 17/30073*** (2013.01); ***G06Q 10/08*** (2013.01); ***G06Q 10/0835*** (2013.01)

(58) **Field of Classification Search**
CPC combination set(s) only.
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 6,539,476 | B1 * | 3/2003 | Marianetti et al. | 713/100 |
| 6,822,422 | B2 | 11/2004 | Sagawa | |
| 7,076,449 | B2 | 7/2006 | Tsunenari et al. | |
| 7,337,310 | B2 * | 2/2008 | Cheston et al. | 713/1 |
| 7,363,567 | B2 | 4/2008 | Rands | |
| 2003/0004734 | A1 | 1/2003 | Adler et al. | |
| 2003/0009465 | A1 | 1/2003 | Brown et al. | |
| 2004/0193610 | A1 | 9/2004 | Alex et al. | |
| 2005/0071032 | A1 | 3/2005 | Urabe | |
| 2008/0027581 | A1 | 1/2008 | Saether et al. | |
| 2008/0059970 | A1 | 3/2008 | Gonen | |
| 2008/0281691 | A1 | 11/2008 | Pearson et al. | |
| 2008/0296374 | A1 | 12/2008 | Gonen et al. | |

(Continued)

FOREIGN PATENT DOCUMENTS

EP 1705872 B1 12/2008

OTHER PUBLICATIONS

Hastings, H & Sande S (Dec. 2009). White Paper: Considerations for Developing an IT Disposal Policy. CA IT Management (hereinafter "Hastings").*

(Continued)

*Primary Examiner* — Peter I. Ludwig
(74) *Attorney, Agent, or Firm* — McGuireWoods LLP

(57) **ABSTRACT**

A system and method for flashing one or more electronic devices. A flashing program executed by a server is accessed from a computing device. The one or more electronic devices are received for communication with the computing device. The one or more electronic devices are identified in response to receiving the one or more electronic devices. The one or more electronic devices are flashed to remove the customer private information through the computing device as instructed through the server.

**10 Claims, 14 Drawing Sheets**



(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 2009/0014363 | A1 | 1/2009 | Gonen et al. | |
| 2009/0049207 | A1 | 2/2009 | Reynolds et al. | |
| 2009/0115600 | A1 | 5/2009 | Lee et al. | |
| 2009/0186603 | A1 | 7/2009 | Usami et al. | |
| 2010/0088305 | A1 | 4/2010 | Fournier | |
| 2010/0161397 | A1 * | 6/2010 | Gauthier et al. | 705/14.4 |
| 2010/0228676 | A1 * | 9/2010 | Librizzi et al. | 705/306 |

OTHER PUBLICATIONS

The examiner defines “server” as “A computer or program that supplies data or resources to other machines on a network.” (emphasis added). See definition at https://web.archive.org/web/20120321215316/http://www.collinsdictionary.com/dictionary/english/server, archived back to Mar. 21, 2012.*

How to Remote Wipe an iPhone or iPad (Jun. 5, 2012) (hereinafter “Remote Wipe”).*

The examiner defines “quarantine” as “A period of isolation or detention”. See World English Dictionary, Collins English Dictionary, Coplete Unabridged 10th Edition (2009).

Feick, D. (Jan. 2011). Cambridge company welcomes your ‘e-waste’. Going Green: A special advertising feature.

Zulhuda (2012) The state of e-govemment security in Malaysia: reassessing the legal and regulatory framework on the threat of information theft. Int’l Islamic Univ. of Malaysia.

Hastings, H & Sande, S. (Dec. 2009) White Paper: Considerations for developing an IT disposal policy. CA IT Asset Management.

ATC Logistics & Electronics (Jul. 23, 2010). Improving the Consumer Experience: Protecting brand integrity with advanced 3PL services. White Paper, www.atcle.com.

Cairns, C.N. (2005). E-Waste and the consumer: Improving Options to Reduce, Reuse and Recycle. IEEE, p. 237-242.

ATC Logistics & Electronics (Dec. 8, 2009). Asset Recovery, Green Logistics: Sustainable 3PL Practices for reverse logistics and asset management. White Paper, www.atcle.com.

Van der Vorst et al. (2005) “Innovations in Logistics and ICT in Food Supply Chain Networks”.

Xiong Ben Hai, et al. (2007): A practical web-based tracking and traceability information system for the pork products supply chain, New Zealand Journal of Agricultural Research, 50:5, 725-733.

New Jersey Comptroller Fines State Agencies Failed to Remove Confidential Information from Computer. SDB. Mar. 24, 2011.

Coia, A. (Oct. 2003). Thinking in reverse—Transportation series; electronics recycling. Recycling Today.

Brannon, C (2006). Unique Reverse Logistics Challenges of IT Asset Disposition. Reverse Logistics Magazine.

International Search Report and Written Opinion date mailed Apr. 17, 2012; PCT International Patent Application No. PCT/US11/58667.

www.n-gage.com (latest date of Feb. 14, 2012), Get Apps for your Nokia device, retrieved on Feb. 7, 2013 from www.n-gage.com.

* cited by examiner

*FIG. 1*



Warehouse Management System 102
100
Returns System 104
Shipping System 106
SHIPPING MERCHANT
112
110
ORIGINAL SHIPMENT (ITEM, INVOICE, RETURN LABEL)
CARRIER(S)
Applications 108
112
Services 110
RETURN LABEL 20
LOCAL DROP OFF
CONSUMER
INITIAL DELIVERY (REVERSE ZONE SKIP)
111
MERCHANT RULES
REGIONAL RETURNS CENTERS
RECEIVING
SCANNING/MANIFESTING/ SORTING
VALUE ADDED SERVICES
NOTIFICATION AND TRACKING DATA
114
AGGREGATED SHIPMENT
CARRIERS
116
FINAL DELIVERY
FIG. 1
DISPOSITIONS
118
RETURNS CENTERS
VENDORS
LIQUIDATORS
OTHER
PACKAGE FLOW
DATA FLOW

*FIG. 2*

200


Consumer 202
Repairs, returns, refurbishment, or recycling 204
Retail Store 206
OEM 208
3rd party 210
Service Provider 212
Logistics control 214
CPI removal process 216
Distribution Information 218
Redistribution 220

*FIG. 3*

300


CPI Device 301
Interface 304
Graphical User Interface 306
Management Logic 302
Libraries 308
Nokia 310
Samsung 312
Motorola 314
Blackberry 316
E-devices 318
Remote Device 330
Desktop Application 332
Network 326
Developer website 328
API
dll
com object
Interface Commands and Scripts 320
Directory Structure 322
Baseline Memory Map 324
330
332
334
336

FIG. 4


Discover make, model, device identifier, software version, and other device specific information
402
Automatically examine device to verify that all CPI is removed from the device
404
CPI removed?
406
No
Yes
Prepare the device for distribution
408
Redistribute the devices
410
Record device information and information documenting the CPI
412
Clean the CPI from the device
414
Report the information regarding CPI removal
416

*FIG. 5*


Receive an electronic device
502
Scan the electronic device
504
CPI removed?
506
No
Yes
Send CPI removal information verifying removal of CPI
514
Indicate a non-conformity to a user visually
508
CPI removal information received?
516
No
Yes
Record information related to the electronic device to generate an audit trail and trend analysis
510
Prepare and redistribute the electronic device
518
Ensure controls do not allow the electronic device to be reintroduced
512


Warehouse Management System
602
CPI Removal System
604
Flashing System
606
608
CPI?
Yes
No
Mark the electronic device as including CPI
610
Quarantine the electronic device
612
Receiving
612
608
CPI?
Yes
No
Process the electronic device to remove CPI
614
Allocating
614
Yes
608
CPI?
No
Shipping
616

FIG. 6

*FIG. 7*


Graphical User Interface 700
CPI Cleared
CPI Present
Username
Dswen
Password
*********
Customer/ Company ID
24548
CPI Information
Device Identifier/IMEI
File/Memory Location:
File Type:
Device received from:
Date CPI cleared:
Individual performing CPI removal:
CPI removal reported with the receipt of the report received? Date:
Individual performing CPI removal:
Device Functional
Operating System Restored
Co-branding Restored: Graphics, ringtone, theme
Settings: Radio on, language options, security certificates
Included memory devices cleared
Applications installed:

FIG. 8


Product arrives at a dock
802
Transfer the product from a truck to a staging area
804
Analyze product with CPI tool
806
Create a pass or fail record for each unit based on presence of CPI and/or missing defaults
808
Attempt to complete receipt of inventory
810
Create a quarantine record for each unit with the fail record or a missing record from the CPI tool
812
Quarantine present?
814
YES
Systematically blocks receipt of inventory with fail records or missing records
820
No
Return the product to the vendor?
822
No
Receive inventory with pass records
816
Use CPI tool to clear CPI
824
YES
Continue normal warehouse operations
818
End

FIG. 9


Receive an order
902
Attempts to allocate inventory from a specific inventory bin for location
904
Quarantined product in the bin?
906
Lock the bin so that no inventory from this location may be used for an order
912
Allocate units from bin
908
Continue normal warehouse operations
910

FIG. 10



Attempt to print a shipping label for a unit
1002
Checks for a quarantine record for unit
1004
Quarantine record?
1006
Will not print shipping label
1010
Print shipping label
1008

FIG. 11



Receive an electronic device for analysis 1102
Automatically recognize the electronic device including communications service provider, make, model, and software versions 1104
Compare content on the electronic device with default values to determine differences and exceptions indicating whether CPI is present 1106
CPI present? 1108
Yes
No
Record device information and information documenting the CPI 1114
Store information in a database indicating the electronic device is clear from CPI 1110
Process the electronic device 1112
Clean the CPI from the electronic device and prepare the electronic device for processing 1116
Receive user input as necessary to clear CPI 1118

*FIG. 12*


Execute a flashing program remotely through a secure connection and receive acceptance of terms
1202
Receive one or more electronic devices for analysis
1204
Automatically recognize the one or more electronic devices including communications service provider, make, model, and software versions
1206
Prepare the flashing program to flash the one or more electronic devices and remove CPI from the one or more electronic devices
1208
Compare content on the one or more electronic device with default values to determine differences and exceptions indicating whether the CPI is removed
1210
Document the CPI for the user if approved
1214
Automatically flash and clear the CPI from the one or more electronic devices and provide user instructions for clearing the CPI as needed
1216

*FIG. 13*


Software Verification Application 1300
Firmware 1302
Applications 1304
Default Applications Installed 1306
Correct Versions of Applications 1308
Settings 1310
Radio On 1312
Correct language packs 1314
Carrier ringtone set as default 1316
Branding 1318
Startup Graphics 1320
Wallpapers 1322
Themes 1324
File System 1326
Memory Cards 1328
Tutorials 1330
Sample Music 1332
CPI 1334
Customer Pictures 1336
Videos 1338
Email 1340

*FIG. 14*


Electronic Reference
1402
Tested Unit
1404
Firmware
1406
Compare
Firmware
1408
Applications
1410
Compare
Applications
1412
Settings
1414
Compare
Settings
1416
Branding
1418
Compare
Branding
1420
File System
1422
Compare
File System
1424

# SYSTEM AND METHOD FOR SYSTEMATICALLY REMOVING CUSTOMER PERSONAL INFORMATION FROM AN ELECTRONIC DEVICE

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a Continuation-In-Part of U.S. patent application Ser. No. 12/940,331 filed Nov. 5, 2010 entitled "SYSTEM AND METHOD FOR REMOVING CUSTOMER PERSONAL INFORMATION FROM AN ELECTRONIC DEVICE", which is a co-pending application of U.S. patent application Ser. No. 12/940,411 entitled "SYSTEM AND METHOD FOR FLASHING A WIRELESS DEVICE" filed on Nov. 5, 2010; Ser. No. 12/940,346 entitled "SYSTEM AND METHOD FOR AUDITING REMOVAL OF CUSTOMER PERSONAL INFORMATION ON ELECTRONIC DEVICES" filed on Nov. 5, 2010; and Ser. No. 12/940,299, entitled "SYSTEM AND METHOD FOR TRACKING CUSTOMER PERSONAL INFORMATION IN A WAREHOUSE MANAGEMENT SYSTEM" filed on Nov. 5, 2010. This application is also a co-pending application of Ser. Nos. 13/587,587 and 13/587,609 entitled "SYSTEM AND METHOD FOR PERFORMING A SOFTWARE COMPARISON" and "SYSTEM AND METHOD FOR REMOTELY FLASHING A WIRELESS DEVICE" both filed concurrently herewith. The teachings and disclosures of which are each hereby incorporated in their entireties by reference thereto.

## BACKGROUND

The use of and development of communications has grown nearly exponentially in recent years. The growth is fueled by larger networks, more reliable protocols, enhanced software functionality, and better communications hardware available to service providers and consumers. As a result, more people than ever are buying and using electronic devices. Correspondingly, the number of returns, repairs and refurbishments are at record levels creating logistical problems.

Under various circumstances, users may return electronic devices to an original equipment manufacturer (OEM), retailer, repair facility, service provider, or other entity. Electronic devices are often returned for repairs, refurbishment, exchanges, warranty issues, or any number of other justified or arbitrary reasons. It is imperative that any electronic device that has been returned be cleared of all personal information, sensitive data, or other information linked to a previous user. If the personal information is not removed, applicable laws, industry standards, and common business practices may be violated. For example, the personal information may be used by another party to perpetrate an act of identity theft. Similarly, the privacy of a previous user may be otherwise violated.

## SUMMARY

One embodiment includes a system and method for flashing one or more electronic devices. A flashing program executed by a server may be accessed from a computing device. The one or more electronic devices may be received for communication with the computing device. The one or more electronic devices may be identified in response to receiving the one or more electronic devices. The one or more electronic devices may be flashed to remove the



customer private information through the computing device as instructed through the server.

Another embodiment provides a system for flashing one or more electronic devices. The system may include a server configured to execute a flashing program. The system may further include a computing device configured to communicate with the server through a secure connection. The computing device may execute an application for communicating with the flashing program. The application may display a user interface for displaying information and receiving user input. The computing device may also include an interface for communicating with the one or more electronic devices. The server may identify the one or more electronic devices in response to the application sending information retrieved through the interface to the flashing program. The server may configure the flashing program in response to identifying the one or more electronic devices. The computing device may flash the one or more electronic devices to remove customer private information in response to instructions received from the flashing program.

Yet another embodiment provides a computing device operable to configure one or more electronic devices. The computing device may include a processor configured to execute a set of instructions and a memory configured to store the set of instructions. The set of instructions may be executed to access a flashing program executed by a server through a network connection, send information about the one or more electronic devices to the flashing program to identify the one or more electronic devices, and flash the one or more electronic devices to remove customer private information through the computing device as instructed by the flashing program.

## BRIEF DESCRIPTION OF THE DRAWINGS

Illustrative embodiments of the present invention are described in detail below with reference to the attached drawing figures, which are incorporated by reference herein and wherein:

FIG. **1** is a pictorial representation of a merchandising process in accordance with an illustrative embodiment;

FIG. **2** is a flow diagram of a process flow for processing electronic devices to remove CPI in accordance with an illustrative embodiment;

FIG. **3** is a block diagram of a system for merging CPI in accordance with an illustrative embodiment;

FIG. **4** is a flowchart of a process for determining the presence of CPI on an electronic device in accordance with an illustrative embodiment;

FIG. **5** is a flowchart of a process for verifying removal of CPI from an electronic device in accordance with an illustrative embodiment;

FIG. **6** is a flowchart of a process for auditing electronic devices for CPI during processing in accordance with an illustrative embodiment;

FIG. **7** is a pictorial representation of a graphical user interface for removing CPI from an electronic device in accordance with an illustrative embodiment;

FIG. **8** is a flowchart of a process for processing a device for CPI in accordance with an illustrative embodiment;

FIG. **9** is a flowchart of a process for allocating units in accordance with an illustrative embodiment; and

FIG. **10** is a flowchart of a process for shipping a unit in accordance with an illustrative embodiment;

FIG. **11** is a flowchart of another process for removing CPI from a device in accordance with an illustrative embodiment;

FIG. **12** is a flowchart of a remote process for removing CPI from a device in accordance with an illustrative embodiment;

FIG. **13** is a pictorial representation of an application for software verification in accordance with an illustrative embodiment; and

FIG. **14** is a pictorial representation of a software verification process in accordance with an illustrative embodiment.

## DETAILED DESCRIPTION OF THE DRAWINGS

The illustrative embodiments provide a system and method for detecting, tracking and removing customer private information (CPI) from electronic devices. As defined herein, removing and managing CPI includes managing and adding co-branding, default content, settings, functionality, memory card status, and customer information that may be reset, removed, or restored in order to return the electronic devices to an acceptable state. CPI is removed from electronic devices in order to ensure the electronic devices may be repaired, exchanged, substituted or otherwise recycled for usage. The co-branding, default content, and settings are verified to ensure that the electronic device is still functional for a user and able to communicate through a communications service provider.

The detection of and removal of CPI allows service providers and other organizations to comply with applicable laws, meet industry standards and maintain good relationships with consumers, retailers, service providers and others that may utilize the electronic device or provide services for those electronic devices. The illustrative systems are further operable to record and audit compliance of CPI removal or non-removal during processing of an electronic device.

In logistical, returns, and warehousing facilities and systems, one or more checks, determinations, scans, or searches for CPI may be performed before or after standardized processes, such as receiving, allocation, and shipping. The facilities in which CPI removal or detecting are performed may also include retail stores, merchandising outlets, service centers, refurbishers, audit locations, and other parties, services, and operations that sell or otherwise process electronic devices.

Electronic devices may include computing and telecommunications devices including cell phones, PDAs, smartphones, laptops, e-readers, mp3 players, and other forms of personal, business, or consumer electronic devices. CPI may include information, such as names, phone numbers, addresses, e-mail addresses, IP addresses, social security numbers, databases, email addresses, bank accounts, contact lists, address books, passwords, usernames, and other sensitive information associated with the user or utilized by the user.

The inability to properly remove CPI may result in identity theft, consumer bad will, contract or legal violations, and other undesirable effects or outcomes. In various embodiments, the CPI removal and detection process may be utilized or integrated into warehouse management operations, returns or shipping systems logistics services, and systems and devices that are utilized to process electronic devices or other goods. The electronic devices are processed by determining or detecting whether CPI is present on the electronic device, removing the CPI if necessary and reporting the removal or non-removal of CPI on devices that are being processed or have previously been processed to provide an audit trail as well as trend analysis information to interested parties. The CPI removal process further ensures that the electronic devices are properly configured and include the software specified by the OEM, service provider, or other controlling entity.



The embodiments as herein described, may be automated or may require user interaction. In particular, the illustrative embodiments provide a system and method for tracking CPI that is detected within processed or unprocessed electronic devices and implementing CPI removal as well as tracking. The illustrative embodiments may be utilized to check for (or check and clear) CPI from electronic devices (also referred to as detect or detect and delete). All electronic devices with CPI may be identified with relevant information or metadata stored for local or distributed utilization by one or more parties. As a result, any number of parties may quickly determine whether CPI is present, and if so, steps may be taken to remove the CPI and ensure that electronic devices with CPI are not distributed into the stream of commerce or processed in facilities without first being cleared of the CPI in real-time or in the future.

FIG. **1** is a pictorial representation of a merchandising process in accordance with an illustrative embodiment. In one embodiment, the merchandising process **100** of FIG. **1** may be implemented by a warehouse management system (WMS) **102**. The WMS **102** may include a returns system **104**, a shipping system, applications **108**, services **110**, and databases **112**. The merchandising process **100** and WMS **102** may be utilized to receive, process, and ship electronic devices. Additionally, the WMS **102** may audit the detection and removal of CPI during any part of the merchandising process **100**.

During all or any step or portion of the merchandising process **100**, electronic devices may be analyzed to determine whether CPI is present and, if present, to remove the CPI so that the electronic device may be further processed. In one embodiment, electronic devices may be randomly tested during the merchandising process **100** to determine whether CPI is present. The WMS **102** is one embodiment of an information and data processing system that tracks and records the processing of the electronic devices through one or more facilities. FIG. **1** illustrates both the flow of packages, inventory, and electronic devices as well as data flow (as described by the included legend).

The WMS **102** is used to collect data scanned from return labels, and to process the returns. The processing center **102** includes computer processing equipment, including computers, data storage, scanners (i.e., barcode, RFID, etc) and networking equipment, appropriate for communication of data to and from returns centers, merchants, and customer, as appropriate.

The computing equipment is programmed to fulfill the various data processing and CPI removal services described herein. In one embodiment, the WMS **102** includes nodes, computers, access points, terminals, or other elements for displaying information, receiving user input, and scanning the electronic devices as moved through each stage of the merchandising process **100**. For example, WMS **102** may provide a web page or other network-accessible data source, accessible by customers for obtaining information about returns and data for printing return labels. The WMS **102** also stores business rules from merchants, which may be delivered to it by electronic transmission over a data communications network. As explained below, the WMS **102** matches data on the return label to the merchant rules, which may specify disposition of the package or other rules for handling and/or to an identifier associated with an electronic device, the return.

The WMS **102** may include a CPI device operable to determine whether CPI is present on one or more electronic devices as described in FIG. **3**. The returns system **104** and shipping system **106** may be modules, instructions, or hardware elements dedicated to tracking returns and shipping of electronic devices, respectively. The applications **108** may represent any number of standard or customized applications that may be part of the WMS **102**. The services **110** may represent other features and services that may be provided during the merchandising process **100** and/or by the WMS **102**.

The database **112** may store information about electronic devices and other inventory that is tracked as it moves through the merchandising process **100**. In one embodiment, the database **112** may store information regarding the co-branding information (i.e. graphics, ringtone, themes, etc) for each electronic device, default content (e.g. operating system version, applications, etc), settings, and clearing functions (i.e. reflash, master clear, master reset, etc.) that have been run on each electronic device. In one embodiment, the database **112** may store libraries or scripts that are utilized for each device according to applicable service provider, manufacturer, type, and issue to ensure that the electronic device is cleared of CPI and configured.

In particular, the database **112** may track information relating to the detection and removal or attempted removal of CPI from electronic devices. For example, the WMS **102** may record when CPI was first detected, the operator and system detecting the CPI, the quarantine process including marking the device physically and electronically as quarantined, and the process for removing or attempting to remove the CPI in finite detail. In one embodiment, the returns system **104** or the shipping system **106** may generate a quarantine label indicating that the device is at least temporarily quarantined. For example, the label may include a barcode or other scannable identifier.

The applications **108**, services **110**, and database **112** may communicate with one or more internal or external networks to receive updates, data, and information, and communicate status, tracking, and other information regarding the processing of electronic devices. For example, the services **110** may send automated messages to a service provider based on the database **112** indicating that CPI has been found on incoming device(s) that relates to the service providers processes and business. In addition, the service provider, retailer, or other third party may receive notices according to rules utilized by the WMS **102** when electronic devices are received, value added services are performed (i.e. repair, refurbishment, etc), and when the shipping label is generated to fulfill an order. The rules between the returns provider and service provider govern communications, notifications, and remote access to the WMS **102**.

In one embodiment, returns are processed through a returns provider that manages and logistically handles returns for multiple merchants. The systems and methods herein described may also be easily adapted for a returns provider that handles only returns for a single merchant. In either case, the merchant is considered to maintain at least one returns center, whether by directly maintaining the returns center(s) or by associating with a third party that does so.

In step **110**, a merchant, service provider, or other party has delivered an item to a customer. In step **111**, the customer has decided to return the item, herein referred to as "the return item." A returns label **20** may have already been, or is to be, provided to the customer. For example, the return label **20** is delivered as an enclosure with the customer's original order, such as by being part of the customer invoice or a separate insert.

In other embodiments, the return label **20** could be downloaded from a data network and printed by the customer, or otherwise delivered to the customer by means other than being included with the merchandise delivery. For example, the return label may be separately mailed or sent by facsimile. As another example, the customer might access a website provided by the merchant, link to a returns page, and download the data for printing the return label.

The return label **20** is "pre-authorized" in the sense that the customer not need seek authorization from the merchant. The customer is apprised by the merchant that returns are pre-authorized, such as by information on the invoice or other shipping documents. The notification may be explicit on the return label or elsewhere or may be implicit. The customer may be further apprised that the customer need not pay shipping charges, such as by a "no postage necessary" printing on the return label **20**.

The customer may affix the returns label **20** to the packaging for the return item and deliver over the return item to a carrier without paying any shipping charges to the carrier. The customer not need to affix any address markings, make payments, or present indicia of postage, or go through any other shipping process as the return label may accurately represent the necessary information. The returns label may further indicate that delivery charges are to be paid by a recipient. The returns label **20** further identifies the transaction leading to the return. In one embodiment, this is a purchase transaction and the identification is by invoice number or other indicia of the package or its contents. In other embodiments, the transaction could be a warranty claim, repair request, or bulk shipment from a service provider, retailer, or other party.

In step **112**, the carrier delivers the return item to the returns provider. As stated above, in the embodiment of FIG. **1**, the initial point of return for the package is a standard or specialized returns center, which may receive returns for more than one merchant. The returns center may be regional for a large area such as the United States. In other words, a large geographic area may have a number of returns centers. At the time the data for each returns label **20** is composed, the destination address on the label **20** is determined based on the available returns centers.

In step **114**, the returns provider receives the package from the carrier. The returns provider may scan the return label on the package and weigh the package. Any special shipping flags or indicia are entered at this time. For example, the indicia may indicate that an included electronic device may have CPI. In one embodiment, the process of FIG. **8** may be implemented when electronic devices are received.

The electronic devices may be scanned for CPI and if present may be physically and/or electronically quarantined. The electronic devices may also be quarantined if not properly configured or reset to pre-set criteria or standards. For example, the electronic device or associated package may be marked with a quarantine label and an electronic quarantine information associated with an identifier of the electronic device and/or associated package. Although, not show, the electronic devices may be sent to a quarantine area for removal of the CPI utilizing a CPI device. In one embodiment, individual electronic devices or batches of devices may be rejected or prevented from being received individually or collectively. In particular, the WMS **102** and return system **104** may prevent the device from being

entered in the system while CPI is present. In this manner, the returns provider receives multiple packages, which may be items originating from multiple merchants or customers, throughout a daily course of business.

In a process known as manifesting, the returns provider calculates the shipping charges due to the carrier and electronically manifests the carrier. In one embodiment, this is done on a daily basis. In the example of this description, the returns provider pays the carrier, and is compensated by the merchant for carrier costs and other services.

The returns provider may then sort the packages by merchant, again using data printed on return label **20** or another indicia affixed by the returns provides, and collects the packages associated with each merchant. The final destination code is encoded on the return label, and may also be printed in human readable form. For large volume merchants, the destination code may be associated with a package chute and/or a docking door.

The returns provider may also provide "value added" services for the benefit of the merchant, such as notification of the return to merchant or notification to the customer of receipt of the package. For example, the returns provider may use the scanned return label information to notify the customer and/or the merchant that the package has been received and whether or not the electronic device was received with CPI. This information may be particularly useful to a service provider that has previously paid a third party or has itself processed a device to remove CPI. In one embodiment, the WMS **102** may document the location and type of the CPI as well as uploading a memory map that proves CPI was present for additional analysis or comparison as needed.

Value added services may include repairing, refurbishing, updating, recycling, or otherwise processing the electronic devices and the associated steps, such that they are suitable for further disposition including return, resale, standard usage, and so forth. After the value added services have been performed, the electronic devices may be systematically or randomly analyzed for CPI.

In step **116**, after aggregating the packages for each merchant, the returns provider further ships them in accordance with whatever policies are specified for that merchant. For example, the returns provider may palletize shipments back to the merchant. The return label data is used to create a bill of lading, with data such as pallet counts, package counts, and shipment weight. In addition, electronic devices may be shipped back individually to other returns centers, vendors, liquidators, customers, stores, or other parties. In one embodiment, the policies are implemented electronically by the WMS **102**.

Before an order may be fulfilled or the return label may be printed, a final CPI verification may be required as further illustrated in FIGS. **8** and **9**. In step **118**, the package is handled according to the disposition policy or rules of the merchant, such as by being returned to stock, sent to a re-seller, liquidator, or otherwise disposed.

FIG. **2** is a flow diagram of a process flow **200** for processing electronic devices to remove customer private information in accordance with an illustrative embodiment. The process flow **200** illustrates one embodiment of electronic devices being managed and processed for subsequent redistribution. The process flow **200** may include any number of users, participants, steps, and systems that may be automated or implemented based on user input.

In one embodiment, a consumer **202** returns one or more electronic devices. The consumer **202** may physically present the electronic device, ship the device or connect the



device to a portal or an interface managed by a service provider. In one embodiment, the electronic device is presented or supplied for repairs, returns, order fulfillment, refurbishment, or recycling **204**. In addition, the electronic device may be received for any number of other purposes not specifically described such as upgrades, reconfiguration or user transfer.

The parties that may communicate or interact with the consumer **202** to receive the electronic device or devices for repairs, returns, order fulfillment, refurbishment, or recycling **204** may include a retail store **206**, an OEM **208**, a third party **210** and a service provider **212** (collectively, the "parties" **213**). The retail store **206**, OEM **208**, third party **210** and service provider **212** represent a few of many possible parties, organizations, groups or individuals that may receive the electronic devices. The parties **213** may physically or electronically present electronic devices to a logistics control **214**.

In one embodiment, the logistics control **214** is a warehouse management facility or operation that is operable to process electronic devices for repairs, returns, refurbishment or recycling **204**. The logistics control **214** may have legal or contractual obligations or agreements with the parties **213** to process the electronic devices. The logistics control **214** may also be utilized when the parties **213** need to process an electronic device in a way which is incompatible with their business model, technical skills, or day-to-day operations.

The logistics control **214** may include any number of systems, equipment, and devices configured to detect and remove CPI. In one embodiment, the logistics control **214** may implement a CPI removal process **216** in order to clear the CPI from electronic devices for subsequent reuse and/or redistribution. For example, a number of users may connect electronic devices to a test stand to detect and remove CPI for a service provider and perform necessary tests. The test stand may also reconfigure each electronic device with settings, parameters, software, graphics, and other content. The CPI removal process **216** implemented by the logistics control **214** is further described in terms of systems, devices, interfaces, and methods described herein, such as in FIGS. **3-6**.

The CPI removal process **216** may track and record all information relevant to the removal of CPI information from the electronic devices for subsequent access or reporting performed by the logistics control **214** or the parties **213**. In one embodiment, the CPI removal process **216** includes a portal and database storing the CPI-related information for retrieval by the logistics control **214** and the parties **213**. The logistics control **214** may include any number of different facilities or systems that may operate independently or may be networked. As a result, the CPI removal process **216** may communicate with any number of other logistical control centers and CPI removal systems and processes to perform tracking, reporting, auditing, and verification.

If or once electronic devices are satisfactorily cleared of all CPI and configured, distribution information may be utilized as part of redistribution **220**. Redistribution **220** may include returning the individual electronic devices to the respective parties **213** or the consumer **202**, sending the electronic devices according to the distribution information **218**, or otherwise shipping or processing the electronic devices.

In one embodiment, in which the CPI removal process **216** is performed remotely from the facility or systems of the consumer **202** or the parties **213**, redistribution **220** may entail returning control to the applicable parties or activating or authorizing the electronic devices to function normally

(i.e. pre-established default settings, parameters, OS versions, and applications). For example, once the logistics control **214** begins implementing management of the electronic devices, all other functionality may be locked out for the electronic devices (with the exception of failsafe or failover operations).

FIG. **3** is a block diagram of a system **300** for merging customer private information in accordance with an illustrative embodiment. The system **300** is one embodiment of a device, networked computing system, or environment in which CPI may be detected, removed and reported.

In one embodiment, the system **300** may include a CPI device **301** or system. The CPI device **302** may be utilized to detect and remove CPI information. In one embodiment, the CPI device **301** may include management logic **302**, an interface **304**, a graphical user interface **306**, libraries and models **308** including libraries for Nokia **310**, Samsung **312**, Motorola **314**, Blackberry **316**, E-devices **318**, interface commands and scripts **320**, a directory structure **322** and a baseline memory map **324**. The CPI device **301** may further communicate with a network **326**. The network **326** may communicate with a developer website **328**. The system **300** may be utilized to test electronic devices **330-336**.

In one embodiment, the CPI device **301** is a personal computing device, such as a desktop computer configured to communicate with one or more electronic devices **330-336** concurrently or simultaneously. In another embodiment, the CPI device **301** may be a server or other network device that acts as a master WMS and is accessible to any number of remote computing devices or terminals to perform the methods herein described. The CPI device **301** may include any number of computing or communications elements not specifically described herein including, but not limited to, motherboards, busses, ports, cards, interfaces, adapters, peripherals, displays, jacks, processors, memories, operating systems, applications, modules or similar hardware or software components. The CPI device **301** may include WMS hardware, software, equipment and interfaces in addition to the described elements.

In one embodiment, the management logic **302** is the logic that implements the CPI recording and removal. The management logic **302** may include one or more processors and memories configured to execute commands, instructions, or codes to perform the CPI management. In another embodiment, the management logic **302** may be core software executive or a software module that controls the other functions of the CPI device **301**. The management logic **302** may also utilize the libraries **308**, interface commands and scripts **320**, directory structure **322**, and baseline memory map **324** to update the configuration of each electronic device including branding, software, versions, default content, settings, parameters, functionality, and other stored information including internally or externally connected memories (i.e. memory cards).

The processor of the management logic **302** is circuitry or logic enabled to control execution of a set of instructions. The processor may be microprocessors, digital signal processors, application-specific integrated circuits (ASIC), central processing units, or other devices suitable for controlling an electronic device including one or more hardware and software elements, executing software, instructions, programs, and applications, converting and processing signals and information, and performing other related tasks. The processor may be a single chip or integrated with other computing or communications elements.

The memory of the management logic **302** is a hardware element, device, or recording media configured to store data



for subsequent retrieval or access at a later time. The memory may be static or dynamic memory. The memory may include a hard disk, random access memory, cache, removable media drive, mass storage, or configuration suitable as storage for data, instructions, and information. In one embodiment, the memory and processor may be integrated. The memory may use any type of volatile or non-volatile storage techniques and mediums.

The management logic **302** may be operable operate automatically or autonomously with or without user input in multiple instances and with multiple display outputs (i.e., screens, views, windows, etc). In another embodiment, the management logic **302** may require user interactions to connect the electronic devices **330-336** and provide user input.

The interface **304** is an input/output system for interacting with the user audibly, visually, and/or tactilely. The interface **304** may include a keyboard, monitor, mouse, voice control system, touch pad, track ball, or other systems or devices for interacting with a user. In one embodiment, the graphical user interface **306** provides a visual interface for interacting with the user. One embodiment of the graphical user interface **306** is illustrated in FIG. **6**. The graphical user interface **306** may display information regarding the connected electronic device **330-336**, ongoing CPI removal, reports, updates, and other information.

The network **326** is a network operable to communicate data, packets, voice signals, and other electronic communications. The network **326** may represent any number of public or private networks. In one embodiment, the network **326** is an Ethernet network. The network **326** may be utilized to communicate with developer website **328**, OEMs, service providers, and other parties to communicate CPI removal reports, problems, libraries, scripts, memory maps, and other electronic communications or resources utilized by the CPI device **301**.

The libraries **308** includes the electronic information, models, data, scripts, logic, processor, and programs for detecting and removing CPI and configuring or reconfiguring the electronic device **330-336**. The libraries **308** may include open source or proprietary information and databases. The libraries **308** may store information for any number of device, models and configurations. Examples of libraries for Nokia **310**, Samsung **312**, Motorola **314**, Blackberry **316**, and E-devices **318** are shown. In one embodiment, the libraries **308** may include information designating a baseline memory map and locations in memories of various makes and models that need to be overwritten, searched, or deleted to completely remove the CPI. The various manufacturers, service providers or others may provide scripts, programs, or modules configured to detect and/or delete CPI. Likewise, the libraries **308** may store and update firmware, operating systems, applications, and other versions that are installed on the electronic devices **330-336** before, during, or after the CPI removal process. For example, the baseline memory map **324** may also be uploaded or re-written to the electronic devices **330-336** to update operating systems, applications, default images, video, and files, and to otherwise configure the electronic device **330-336**.

In one embodiment, the libraries **308** may include applications that are temporarily installed on the electronic devices **330-336** in order to detect or detect and remove CPI. For example, for electronic device **334**, a Java application may be required to be temporarily installed to interface with the phone. Temporary applications may be required when there is a limited API or the applicable electronic device

grants limited privileges to outside systems or devices. The temporary application may perform the detection and/or removal. Once the temporary application within the libraries **308** has ensured the CPI is removed, the temporary application may be deleted or otherwise uninstalled by the CPI device **301** or from the electronic device. The CPI device **301** may also verify that the temporary application has been removed.

In one embodiment, content within the libraries **308** may include the interface commands and scripts **320**, the directory structure **322**, and the baseline memory map **324**. The commands and scripts **320** provides data, commands, and information, such as how to perform a query, enabling the CPI device **301** to interface with specified electronic devices.

The directory structure **322** provides details regarding the likely or possible locations of CPI within specified electronic devices. The baseline memory map **324** may provide a template of what a baseline, cleaned, or default memory map of an electronic device should be (or how the electronic device should be configured) for comparison with a real-time memory map of a tested electronic device to identify and remove CPI. The baseline memory map **324** may also identify the types of memory utilized by the electronic device, such as flash memory and a hard drive. In one embodiment, the baseline memory map **324** may also store a scan or electronic imaging of the electronic device **334** before CPI removal for comparison with another baseline memory map **324** or imaging of the electronic device performed after an attempt to remove the CPI was performed. The electronic image or other form of memory map of the electronic devices **330**-**336** may be stored in the CPI device **301** for access by the remote device **330** or other devices, systems or parties. For example, a retailer may access the electronic imaging performed for the electronic device **334** to ensure that CPI was properly removed when servicing the electronic device **334** or addressing a customer issue.

The CPI device **301** may include any number of ports, jacks, interfaces, hubs, or electronic interfaces (with or without built-in cords) for physically or wirelessly connecting the electronic devices **330**-**336** to the CPI device **301**. In one embodiment, testing may be initiated automatically by the management logic **302** in response to connecting the electronic device **334** to the CPI device **301**. The CPI device **301** automatically determines the manufacturer, model, variant, and software version for the electronic devices **330**-**336**. The CPI device locates and determines CPI, such as data, pictures, contacts, menu items, called log entries, user applications, and so forth, that do not conform with a desired state for that electronic device. The desired state may be referred to as the baseline memory map **324** or baseline profile model without CPI. In one embodiment, if the CPI device **301** does not recognize the electronic device **323**, the graphical user interface **306** may prompt the user to enter a model for the electronic device. If no model exists, the CPI device **301** may prompt the user to enter information or retrieve information for determining the desired state and for configuring the CPI device to test the electronic device **324** (or similar devices) for future testing. For example, the user may be prompted to enter a time/date, serial number, identifiers, and state of the device when tested.

The electronic devices **330**-**336** represent the devices under test. Any combination of the electronic devices **330**-**336** may be tested simultaneously, sequentially, or concurrently. For example, eight netbook models with a single configuration may be tested simultaneously by the CPI device **301**. In another example, a test for electronic device **330** may be initiated and may continue to run while tests are initiated and executed for electronic devices **332** and **334** allowing each of the tests to be implemented separately and run at the same time. In one embodiment, the CPI device **301** may include multiple partitions that are accessible to store and test distinct device types and configurations that may have hardware or software conflicts.

Each of the electronic devices **330**-**336** may require different testing. Testing may involve comparing a desired state (such as a model with all CPI removed) with a state determined for a model of an electronic device under test and variations and baseline characteristics of that electronic device. The electronic devices **330**-**336** may also be configured to a default or specified state are part of the CPI removal process.

In another embodiment, the system **300** may include a remote device **330** locally or remotely executing a desktop application **332**. The remote device **330** may be operated by one or more remote users to perform the functions and operations of the CPI device **301**. In one embodiment, the CPI device **301** is a networked device that includes or manages a database including the libraries **308**. The CPI device **301** may be accessible by the remote device to clear CPI off of devices that are connected to the remote device **330**. The desktop application **332** may include the desktop application **332** for clearing the CPI as described for the CPI device. The desktop application **332** may be locally stored and installed, a web interface, or a network application that may be accessible through a server, advanced intelligent network device, or the CPI device **301**.

In one embodiment, the remote device **330** may be provided to a communications service provider dealer network, retail stores, or other parties that may need to remove CPI. For example, the operator of the remote device **330** may have a license and operation agreement with the operator of the CPI device **301** to remotely access the CPI device **301** or to perform the features and functionality of the CPI device **301** including potentially proprietary CPI removal applications, libraries, and processes utilized by the management logic **302** and the libraries **308**.

In one embodiment, the remote device **330** may access the databases and functions of the CPI device **301** utilizing a SSL connection through the network **326**. Other forms of secure communication known to those skilled in the art may alternatively be utilized. The remote device **330** may access information including audit and reporting records for specified devices to determine whether CPI removal has been previously been performed or attempted. As a result, problems, variations, or exceptions may be detected, analyzed, quantified, and documented. The remote device **330** may be granted full access or access on a transaction-by-transaction basis. For example, an operator of the remote device **330** may be required to enter an IMEI that authorizes the remote device **330** to communicate with the CPI device **301**. The remote device **330** may be utilized to determine whether a device is authorized and CPI free or whether the device has been compromised.

In one embodiment, the operator of the CPI device **301** may charge retailers, refurbishers, and other parties a fee to lease, acquire, or access the functionality of the CPI device **301**, the desktop application **332**, the libraries **308** or services available. For example, the retailer may lease the CPI device **301** or the remote device **330** as well as paying for service fees or update costs associated with updates to the desktop application **332** and/or the libraries **308**.

The processes of the illustrative embodiments may be stored as a set of rules or policies that are electronically and/or manually implemented to govern processing of electronic devices. In one embodiment, the rules may be utilized by a processing system, such as a warehouse management system, to ensure that electronic devices found to contain CPI are properly quarantined until the CPI is verifiably removed. Verifiably removed indicates that a removal or flashing process has been implemented with the electronic device being tested, scanned, or analyzed afterwards to ensure that the CPI is no longer present on the electronic device. In one embodiment, the verification may be performed by comparing a memory map before and after (or with a baseline memory map) to ensure identified CPI was removed. Processing of the electronic devices may be performed utilizing bar codes or other machine readable information integrated with, attached to, or associated with each electronic device.

FIG. **4** is a flowchart of a process for determining the presence of customer private information on an electronic device in accordance with an illustrative embodiment. The process of FIG. **4** may be implemented by a CPI device with or without, user interaction. In one embodiment before the process of FIG. **4** may be implemented one or more electronic devices are electrically connected to the CPI device. For example, a micro-USB connector may be connected to the electronic devices being analyzed, updated, reconfigured, and cleared. In another embodiment, the electronic device may be connected to the CPI device for reconfiguration through a wireless connection, which may include GSM, Bluetooth, WiFi, WiMAX, future equivalents, or other similar connections. The process of FIG. **4** is utilized to test one or more electronic devices by performing statistical monitoring, state recognition, notification or recording of determined states, recognizing the broadest possible range of devices by model and variant, and automating the assessment and actions based in the various determinations.

The process may begin by discovering a make, model, device identifier, software version, and other device specific information (step **402**). During step **402**, the CPI device may scan and analyze the type and configuration of the device. The device identifier may include determining a make, model, International mobile equipment identity (IMEI), IP address, software version, phone number, subscriber identity module (SIM) card, or other hardware or software that identifies the electronic device.

Next, the CPI device automatically examines the device to verify that all CPI is removed from the device (step **404**). The determination of step **404** may be performed before or after other manual or automatic steps have been taken to remove CPI. The CPI device may scan or retrieve data from specific areas of memory to determine whether there is CPI on the device. In one embodiment, the CPI device may perform the determination based on information retrieved during step **402**. For example, particular makes and models of devices may have specified locations for storing CPI. The CPI device may utilize particular circuits, logic, scripts, or algorithms to perform step **404** based on the information determined during step **402**. During step **404**, the current state of the device may be compared against a desired state for the device. The current state may include a real-time memory scan.

Next, the CPI device determines whether the CPI is removed (**406**). If the CPI device determines the CPI is removed, the CPI device prepares the device for distribution (step **408**). Preparing the device may include updating operating systems, settings, content, functionality, applications, and other software for the device. Similarly, the device may be given a complete or partial systems check, re-branding, reconfiguration, and re-packaged (with or without relevant accessories, manuals, and other necessary items) for distribution.



Next, the device is redistributed (**410**). Redistribution may include reselling, returning, shipping, or otherwise returning the device to the relevant party.

In response to determining the CPI is not removed in step **406**, the CPI device records the device information and information documenting the CPI (step **412**). The CPI device may record the date and time, the specific type of CPI found and secure documentation of the CPI, the location of the CPI on the electronic device, a party that initially performed or attempted CPI removal, and other information and metadata related to the device or attempted removal of the CPI.

Next, the CPI device cleans the CPI from the device (step **414**). The CPI may be removed by overwriting appropriate selections, deleting or clearing specific or general portions of memory, utilizing built-in removal codes, scripts, or processes. The CPI may be removed automatically or based on actions of a user, operator, or technician (generically referred to as a user). In one embodiment, a module of the CPI device may remove the CPI from the electronic device utilizing a module an library defining locations of CPI for that specific electronic device.

Next, the CPI device reports the information regarding CPI removal (step **416**). The information of step **412** may be utilized to generate a report and audit trail. The information may be stored in a database, web-portal, record, or other memory element. The records may be tracked for particular service providers, retailers, OEMs, or other parties as well as by particular devices, models, or fields of tracked information. As a result, it may be possible to determine whether there is frequently difficulty or troublesome to remove CPI from specific device types. As a result, the CPI device or removal process may be reconfigured to more effectively remove CPI for future devices. Step **412** may also involve sending one or more electronic messages including metadata to specified parties documenting the CPI. For example, service providers, CPI removal parties, managers, and others may be sent an email or report for every violation, daily, or weekly.

FIG. **5** is a flowchart of a process for verifying removal of customer private information from an electronic device in accordance with an illustrative embodiment. The process of FIG. **5** may be integrated with the process of FIGS. **1** and **4** or may be implemented as an independent process. The process of FIG. **5** may be implemented as a gatekeeping point during any part of a merchandising process for detecting CPI and reporting the CPI to specified parties.

The process may begin by receiving an electronic device (step **502**). An adapter, interface or ports may be utilized to wirelessly or physically connect the CPI device to the device through a proprietary or standard connection.

Next, the CPI device scans the electronic device (step **504**). The scan determines the state of the electronic device and CPI stored or accessible through the device. The CPI device determines whether the CPI is removed (step **506**). For example, the current state of the electronic devices is compared to a desired state utilizing memory maps.

If the CPI is determined to still be present on the electronic device, the CPI device indicates a non-conformity to a user visually (step **508**). In one embodiment, an alert may be presented to a user indicating the non-conformity/failure to the user. The alert may be utilized to implement additional

manual or automatic processes for the electronic device, such as a complete memory wipe and reinstallation of an operating system and applicable applications.

Next, the CPI device records information related to the electronic device to generate and audit trail and trend analysis (step **510**). The audit trail and trend analysis may be utilized to more effectively remove CPI from electronic devices in the future and to indicate potential issues. In some cases, the audit trail may be required to document business practices, compliance with rules and logic, to ensure compliance with laws and business policies.

Next, the CPI device ensures controls do not allow the electronic device to be reintroduced (step **512**). The controls may include printing up a "CPI FAILURE" sticker or quarantine label for the electronic device or storing a message in the electronic device itself indicating that all CPI is not removed. For example, a user may be required to physically scan the device to remove CPI that is unable to be removed through the automated process.

If the CPI is determined to have been removed in step **506**, the CPI device sends CPI removal information verifying removal of CPI (step **514**). The CPI removal information may be sent to designated parties, saved in a database, or otherwise communicated to specified parties.

Next, the CPI device determines whether the CPI removal information is received (step **516**). In one embodiment, an electronic confirmation or indication may be required to acknowledge that the CPI removal information is received by an application, system, device, equipment, or user. If the CPI removal information is not received, the CPI device indicates a non-conformity to a user visually (step **508**). The non-receipt of the CPI removal information may require correcting and documentation before the electronic device may be subsequently redistributed.

If the CPI removal information has been received in step **516**, the electronic device is prepared and redistributed (step **518**). The electronic device may be updated with the most current software, applications, settings, branding, and repackaged and redistributed through the proper channels and with the appropriate documentation indicating that all CPI has been removed and if necessary re-verified with a memory map or other information stored.

FIG. **6** is a flowchart of a process for auditing electronic devices for CPI during processing in accordance with an illustrative embodiment. The process of FIG. **6** may be implemented by one or more of a warehouse management system **602**, a CPI removal system **604**, and a flashing system **606**. In one embodiment, one or more of the warehouse management system **602**, the CPI removal system **604**, and the flashing system **606** (generically referred to as the "WMS" **602**) may be integrated in a device, system, or networked implementation as herein described or in the incorporated reference. The WMS **602** may be utilized as an automatic tool to minimize the possibility of introducing an electronic device including CPI to a customer or the stream of commerce based on human error.

In one embodiment, the process of FIG. **6** may be implemented for a warehouse processing or logistics control system or facility. The process of FIG. **6** may be implemented by testing a device to determine whether CPI is present (step **608**). The determination of step **608** may be performed numerous times by scanning or analyzing the applicable electronic device. Step **608** may additionally include deleting CPI if detected. In one embodiment, the determination of step **608** may make the determination based on a real-time scanning process as well as evaluating previously recorded information for the electronic device.



For example, during step **608**, the WMS may determine whether the electronic device has been certified, as not containing CPI, whether the electronic device is marked as having failed a test based on information in a record, or whether there is no record.

The electronic device is required to include a field, maker, flag, or indicator that specifies that electronic device has been scanned or examined and found not to include CPI. In one embodiment, the WMS may lock out or prevent the electronic device from being entered into anything other than a quarantine queue if CPI is present. As a result, the problem with the electronic device including CPI cannot be propagated further. Metadata of devices including CPI are recording during step **608** for storage. The metadata may specify information, such as when CPI was found, who found it, how it was found, who had previously processed the device, the type and location of the data found, and all electronic images of the device previously generated and the current electronic image. As a result, after further processing the electronic device may be further analyzed utilizing the electronic device and the recorded metadata. In one embodiment, the metadata is stored in a quarantine table linked with the record for the individual electronic device. The quarantine information of the metadata ensures that the electronic device with CPI cannot be utilized in the allocating and shipping process to fulfill an order or request.

If CPI is detected during step **608**, the WMS **602** marks the electronic device as including CPI (step **610**). The WMS **602** may set a field or electronic indicator to specify that the electronic device includes CPI. Additionally, the electronic device may be physically marked with a sticker, bagged, and/or physically separated into a quarantine area. The WMS **602** also quarantines the electronic device (step **612**). The electronic device may be physically and electronically quarantined. As a result, any attempts to electronically process the device may lock the user out of the system (i.e. an interface may display a quarantine notification and prevent the electronic device from being processed) and require the user to take procedures to again quarantine the device, such as walk it to a quarantine area. Next, the WMS processes the electronic device to remove the CPI (step **614**). During step **614**, the CPI may be removed or the device may be flashed to ensure removal of the CPI. In addition, the electronic device may be reconfigured to desired settings, operating system, applications, content, and branding.

As shown, the CPI detection process of step **608** may be performed at anytime before or after receiving (step **616**), allocating (step **618**), or shipping (step **620**) the electronic device. In one embodiment, a load of merchandise, such as processed phones may be unable to be electronically accepted with a phone including CPI is included in the batch. As a result, the entire batch may be returned as being compromised, the individual phone may be returned or quarantined, or the electronic device may be further quarantined or separated with a record kept of the detection of the CPI and rejection of the electronic device as being received for processing. In another embodiment, if CPI is detected on a device during an allocating stage, all of the electronic devices that are in the same batch or being processed with the electronic device may be locked down until each is individually tested. In another embodiment, electronic devices may be randomly tested at any time to ensure that the CPI removal process and procedures are being followed and implemented. The audit information may be automatically uploaded, updated, or sent to specified parties, such as a service provider.

FIG. **7** is a pictorial representation of a graphical user interface for removing customer private information from an electronic device in accordance with an illustrative embodiment. The graphical user interface **700** is one embodiment of an interface that may be presented. The graphical user interface may include information that is automatically populated based on the CPI detection and removal process. Additionally, the graphical user interface **700** may allow interaction with a user. In one embodiment, the user may be required to present identification information, such as a username, password, company identification, or other access information to access the graphical user interface and/or control the CPI device.

In one embodiment, the graphical user interface **700** may indicate whether the CPI has been removed or is still present. The graphical user interface **700** may also indicate the electronic device identifier, file locations(s) of CPI, file types, a party the electronic device is received from, date the CPI was cleared, a user in charge or removing the CPI, CPI removal reports sent and received.

The graphical user interface **700** may include any number of views, windows, and access information for initiating, managing, and reviewing the CPI detection and removal from electronic devices. For example, the graphical user interface **700** may be utilized to generate reports or audits for specific electronic devices or for groups of electronic devices (such as lots or batches of electronic devices received).

The graphical user interface **700** may include any number of fields and menus for selecting the electronic devices for testing. The graphical user interface **700** may also present options, look-up features, and input fields for adding new device types (i.e., new makes and models) for updating the logic and libraries utilized to perform testing.

The graphical user interface **700** may also indicate whether the operating system is restored or updated to a newest version, co-branding is established or restored, settings are reconfigured, integrated or external memory devices are cleared and applications are installed or updated.

The systems, devices, and processes as herein described may be mixed, substituted, or combined in any number of embodiments. FIG. **8** is a flowchart of a process for processing a device for CPI in accordance with an illustrative embodiment. The process of FIGS. **8-10** may be implemented by a processing company ("processor" i.e., warehousing company, logistics control facility, etc) utilizing a CPI device, warehouse management system, or other electronic and tracking tools. The process begins with product arriving at a dock (step **802**). The product represents a shipment of one or more electronic devices. The product may be received via any number of shipment or delivery processes, such as truck, boat, train, and plane to name a few.

Next, the processor transfers the product from the truck to a staging area (step **804**). The processor analyzes the product with a CPI tool (step **806**). The processor creates a pass or fail record for each unit based on the presence of CPI and/or missing defaults (step **808**). For example, a cell phone that does not include CPI may be marked as passing while another cell phone that does not include CPI, but is missing defaults may be marked as failing. Defaults may include software, such as operating systems and applications, updates or other hardware or software requirements for the unit. Units, such as PDAs, that include CPI are marked with a failing record.

Next, the processor attempts to complete receipt inventory (step **810**). The processor also creates a quarantine record for each unit with the fail record or a missing record (step **812**). For example, the quarantine record may be assigned by the CPI tool in an independent process or as part of step **808**.



Next, the processor determines whether a quarantine is present (step **814**). The quarantine may include a physical or electronic quarantine label or identifier associated with the respective unit. If there is not quarantine present, the processor receives the inventory with pass records (step **816**). Next, the processor continues normal warehouse operations (step **818**). For example, the units may be refurbished, repaired, shipped, and so forth.

If the processor determines the quarantine is present in step **814**, the processor systematically blocks receipt of inventory with fail records or missing records (step **820**).

Next, the processor determines whether to return the product to the vendor (step **822**).

If the processor determines to return the product to the vendor, the process ends with the not being accepted or otherwise returned to the vendor or other party.

If the processor determines not to return the product to the vendor in step **822**, the processor uses the CPI tool to clear the CPI (step **824**). The product may also be reconfigured and reloaded to a designated software and setting state. The processor may alternatively use a flashing tool or device to clear the CPI before returning to analyze the product with the CPI tool (step **806**).

FIG. **9** is a flowchart of a process for allocating units in accordance with an illustrative embodiment. The process of FIG. **9** may begin by receiving an order (step **902**). Next, the processor attempts to allocate inventory from a specific inventory bin for allocation (step **904**).

Next, the processor determines whether there is quarantined product in the bin (step **906**). The quarantined product may be detected by evaluating physical and electronic identifiers, randomly or systematically testing the product in the bin for CPI, or otherwise determining the product is quarantined or should have previously been quarantined.

If there is not quarantined product, the processor allocates units from the bin (step **908**) before continuing normal warehouse operations (step **910**).

If quarantined product is found in the bin in step **906**, the processor locks the bin so that no inventory from this location may be used for an order (step **912**). The processes, checkpoints, policies, procedures and systems of the processor may then be evaluated to determine how the product was moved into the bin.

FIG. **10** is a flowchart of a process for shipping a unit in accordance with an illustrative embodiment. The process of FIG. **10** may begin with the processor attempting to print a shipping label for a unit (step **1002**).

The processor checks for a quarantine record for the unit (step **1004**) as an integrated or separate part of the printing process. The processor then determines whether there is a quarantine record (step **1006**). If there is not a quarantine record, the processor prints the shipping label (step **1008**). The printing label may be printed from one or more printing devices in communication with the CPI device/WMS.

If the processor determines there is a quarantine record in step **1006**, the processor will not print the shipping label (step **1010**). In one embodiment, an error or alert message may indicate that the unit must be quarantined may be communicated or displayed to applicable personal. The unit may also be separated and marked as quarantined with additional process and system analysis to determine how the unit reached that location or point in processing.

The illustrative embodiments provide an automated system and method for detecting and removing CPI that is less

reliant on user actions. As a result, the likelihood of user error is decreased and efficiency is increased. Similarly, processed electronic devices are less likely to re-enter the stream of commerce with unremoved CPI. Various types of electronic devices may be tested by a user on a single device without extensive user interaction. The CPE removal device may prompt a user that is not an expert in CPI removal to take certain steps and perform certain actions in a specified order until all conditions are met for removal of CPI.

FIG. **11** is a flowchart of another process for removing CPI from a device or flashing a device in accordance with an illustrative embodiment. The process of FIG. **11** may be implemented by a test stand, fixture, or computing device configured to electrically interface with an electronic device. The process may begin by receiving an electronic device for analysis (step **1102**). The electronic device may be received by electrically connecting the electronic device to the test stand utilizing a cord or wire, or a dedicated wireless connection. For example, the cord may include connectors for interfacing with USB ports and micro USB ports of the test stand and electronic device, respectively. Additionally, a dedicated WiFi, Bluetooth, or other similar wireless connection or link may be established between the electronic device and the test stand. For example, the wireless device may need to be placed in a reconfiguration or paired mode to perform the process of FIG. **11**. The wireless connection may be secured ensuring that any CPI is not available to outside parties.

Next, the test stand automatically recognizes the electronic device including a communications service provider, make, model and software versions (step **1104**). The test stand may utilize retrievable information and executed scripts to determine the information mentioned in step **1104**.

Next, the test stand compares content in the electronic device with a default values to determine differences and exceptions indicating whether CPI is present (step **1106**). In one embodiment, a database in the test stand or accessible by the test stand may store the default values (i.e. baseline values, memory maps, etc). The test stand may run a scan of all or portions of the memory known to store CPI. The scanned data or information may be required to match a pattern, if the scanned data does not match, the differences or exceptions are determined from the different data.

Next, the test stand determines whether CPI is present (step **1108**). If CPI is not present, the test stand stores information in a database indicating the electronic device is clear from CPI (step **1110**). Next, the test stand may process the electronic device (step **1112**). During step **1112** additional software reconfigurations or updates may be performed.

If the test stand determines CPI is present during step **1108**, the test stand records device information documenting the CPI (step **1114**). In one embodiment, the location and type of CPI may be stored locally to the test stand or to a database accessible by a number of parties including service providers, manufacturers, and device processors. For example, the CPI information may be stored in XML records in the warehouse management system.

Next, the test stand cleans the CPI from the electronic device and prepares the electronic device for processing (step **1116**). In one embodiment, the test stand may execute a master clear function that may remove all or 80% of the CPI. In one embodiment, CPI removal and verification may be run during steps **1108** or **1116**. In addition, the electronic device may be flashed, software updated, settings reset, and parameters established during step **1116**.

In addition, the test stand may receive user input as necessary to clear the CPI (step **1118**). The test stand may provide a list, instructions or prompts for checking for and/or removing CPI files from the electronic device.

FIG. **12** is a flowchart of a remote process for flashing a device in accordance with an illustrative embodiment. In one embodiment, the process of FIG. **12** may be implemented by a computing device that is connected to an electronic device wirelessly or through a wired connection. The computing device may remotely communicate with one or more specialized testing devices, such as servers, databases, test stands, cloud or distributed computing systems, or other computing devices. In one embodiment, the computing device may include a heads-up display. The computing device may allow any number of electronic devices to be scanned, analyzed, flashed, and cleared of CPI, sequentially, simultaneously, or concurrently as connected.

The process of FIG. **12** may begin with the computing device executing a flashing program remotely through a secure connection and receiving acceptance of terms (step **1202**). In one embodiment, the user may access or download the flashing program which may include a CPI removal program or tool through the Internet. For example, a browser of the client device may be utilized in a client/server architecture to flash the device and remove CPI without the need for device specific drivers to the loaded and executed on the computing device. In particular, a consistent, simplified, and intuitive interface may be presented to the user for flashing the device or removing the CPI that is easily understood by non-technical users. As a result, resources of the computing device are maintained while utilizing remotely available devices and expertise to remove CPI or flash the device.

In another embodiment, the flashing program may be temporarily or permanently downloaded. The flashing program may be configured to receive automatic updates (i.e. for each device) and may include any number of applicable drivers or libraries that are program or device specific. The flashing program may utilize a plug-and-play framework for removing CPI once the user approves or proactively selects to remove the CPI. The acceptance of terms may include license or payment terms for flashing each device or removing CPI from each device. For example, payment terms may include a per device fee, daily, monthly, or yearly access fee, one-time payment, or other fee structures.

Next, the computing device receives one or more electronic devices for analysis (step **1204**). A user may connect any number of adapters, cords, docking stations, or interfaces to the computing device to provide a connection to the one or more electronic devices. Alternatively, wireless connections may be established with the electronic devices.

Next, the computing device automatically recognizes the one or more electronic devices including communications service provider, make, model, and software versions (step **1206**). The flashing program may be configured to flash and remove CPI from distinct makes, models, and software revisions simultaneously

Next, the computing device prepares the flashing program to remove CPI from the one or more electronic devices (step **1208**). The flashing program may be configured for the electronic devices that are recognized. In some cases, the flashing program may be required to utilize a network connection to retrieve additional instructions, commands, code, libraries, drivers, or other data. In one embodiment, the simplified user interface may load a software controller that hides the complexity of the master flashing program from the user. The software controller interacts with the

remotely available CPI/flash systems and tools utilizing low level operating system application program interfaces to read and control the master systems and user interfaces. For example, the software controller may set the location of the device firmware and communications port, display the progress, and read pass/fail status. In one embodiment, the device specific drivers are installed and executed on the remote server preventing driver conflicts on the computing device. Users may then connect to the simplified user interface to remove the CPI or flash the device. The marker flashing program on the server and the application executed by the computing device may interact and communicate to perform the functions and controls.

Next, the computing device compares content on the electronic device with default values to determine differences and exceptions indicating whether the flash is completed (step **1210**).

Next, the computing device documents the CPI for the user if approved (step **1214**). During step **1214**, detected CPI may be documented internally or externally for the user. For example, the location and type of CPI may be recorded while not tracking the actual information included in the CPI to prevent violation of applicable laws, standards, or commercial practices.

Next, the computing device automatically flashes the electronic device, clears the CPI from the one or more electronic devices, and provides user instructions for clearing the CPI as needed (step **1216**). During step **1216**, the computing device may automatically flash the electronic devices and/or remove as much CPI as possible after which the CPI removal program may prompt the user to remove the CPI. The CPI clearing process includes verifying or ensuring that the electronic device is properly updated to a desired state and reconfigured based on instructions from an associated party, such as a service provider.

In one embodiment, the process of FIG. **12** may be implemented as a flashing program for one or more electronic devices or as a CPI removal program. In another embodiment, both flashing and CPI removal may be performed and verified.

FIG. **13** is a pictorial representation of a software verification application **1300** in accordance with an illustrative embodiment. The software verification application **1300** may be executed and utilized by any of the previously described devices. In addition, the software verification application **1300** may be bundled with any of the other programs, applications, or instructions herein disclosed.

The software verification application **1300** may be executed by a computing device (i.e. including a process, memory, database, etc), such as a server or electronic device utilizing a processing unit. The computing device may include an interface for communicating with one or more electronic devices, such as mobile phones sequentially, simultaneously, or concurrently. For example, the interfaces may include USB ports and wired connections or connectors, wireless transceivers (i.e. WiFi, Bluetooth), or other communications mediums for connecting the one or more electronic devices to the computing device. Tests on multiple devices may be implemented simultaneously, concurrently, sequentially, or in parallel.

In one embodiment, the software verification application verifies the electronic resources of the tested units or devices. For example, the firmware **1302** represents the firmware and software utilized by an electronic device. The firmware and software may include operating systems, applications, settings, configurations, branding, marketing, and advertising content, and other software.



The software verification application **1300** may be utilized to verify the firmware **1302**, applications **1304**, settings **1310**, branding **1318**, file system **1326**, and CPI **1334**. In addition, the software verification application **1300** may verify default content (not shown) for an electronic device that may not be otherwise categorized. The applications **1304** may include default applications installed **1306**, correct versions of applications, user preferences, or application usage information. The settings **1310** may include radio settings **1312**, correct language packs **1314**, and carrier ringtone set as default. The branding **1318** may include startup graphics, wallpapers **1322**, and themes **1324**. The file system may include memory cards **1328**, tutorials, **1330**, and sample music **1332**. For example, the sample music **1332** is indicative of any sample files, such as music, pictures, videos, or so forth. The CPI may include customer pictures **1336**, videos **1338**, and email **1340**. The email **1340** may be indicative of any electronic message, such as chat messages, tweets, texts, picture messages, video messages, emails, audio messages, or so forth. The software verification application **1300** may also verify and clear any number of file systems, memories, caches, databases or other components that vary from the referenced unit.

FIG. **14** is a pictorial representation of a software verification process in accordance with an illustrative embodiment. In one embodiment, the process of FIG. **14** may be implemented by the software verification application **1300** of FIG. **13**. An electronic reference **1402** and a tested unit **1404** may be compared to perform the software verification. For example, integrated or externally attached volatile and non-volatile memories of the tested unit **1404** may be scanned, analyzed, or read. The tested unit **1404** may include electronic references including firmware **1408**, applications **1412**, settings **1416**, branding **1420**, and a file system **1424** that are compared against the corresponding portions of the electronic reference **1402** that act as a standard or default for comparison.

The firmware **1406** and **1408**, applications **1410** and **1412**, settings **1414** and **1416**, branding **1418** and **1420**, and file system **1422** and **1424** may be compared to one another utilizing data, information, or memory comparisons. The firmware **1406**, applications **1410**, settings **1414**, branding **1418**, and file system **1422** of the electronic reference **1402** may include a gold standard, memory map, default content, ideal or required content and setting, or golden image that is compared against the respective software of the tested unit **1404**.

The electronic reference **1402** and associated information may be updated through a database, website, or other forms of secure communication. For example, the electronic reference may include content specified by the OEM, communications service provider, and/or other interested parties. The electronic reference **1402** may be specified by the different parties or retrieved from different available resources. For example, firmware may be retrieved from a first database associated with a hardware manufacturer and branding may be retrieved from a second database associated with the communications service provider. The firmware **1406**, applications **1410**, settings **1414**, branding **1418**, and file system **1422** may be specific to the make, model, firmware/software version, service provider, associated organization, and/or other specified information. The standard images may be generated by taking a known specific make, model, carrier, firmware tool and using the software verification application **1300** to read the electronic device and generate a reference unit. The reference unit may then be tested to create exceptions, such as device specific

information, operating system temporary files, or logs that may differ per electronic device.

The process of FIG. **14** may be performed for one or more units under test including the tested unit **1404** simultaneously, serially, or concurrently. In one embodiment, the verification may be performed for each of the described components serially. For example, the process may be performed by a logic engine or processor, such as a results analyzer. The results analyzer may take into account any device specific data, temporary or operating system files, or other data or files that vary by device or other criteria.

The results produced during FIG. **14** indicate whether the tested unit **1404** has the correct firmware **1406**, applications **1410**, settings **1414**, branding **1418**, and file system **1422**. In addition, the software may reflash the device, remove CPI, record or report inconsistencies or unacceptable data, anomalies, or configurations, or otherwise reformat the tested unit **1404** in response to detecting unacceptable firmware, applications, settings, branding, or file system **1424**. The verification process is utilized to verify that the tested unit **1404** is ready to be redistributed and complies with policies, laws, industry practices, and other requirements for the configuration and information of the tested unit **1404**. In response to the tested unit **1404** passing the verification tests and processes, the tested unit **1404** may be further processed. For example, the tested unit **1404** may be packaged for shipping or otherwise prepared to be sent to a user, organization, or other party.

The previous detailed description is of a small number of embodiments for implementing the invention and is not intended to be limiting in scope. The following claims set forth a number of the embodiments of the invention disclosed with greater particularity.

What is claimed:

**1**. A method for flashing an electronic device, the method comprising:

establishing communication, by a computing device, with an electronic device, wherein the electronic device is in communication with the computing device using at least one of a wireless connection and a wired connection;

identifying, by the computing device, a make and model associated with the electronic device;

accessing, by a computing device, a flashing program stored on a network device; and

flashing, by the computing device, as instructed by the flashing program, the electronic device, wherein the flashing removes customer private information from the electronic device;

reporting the removal or non-removal of the customer private information on the electronic device to provide an audit trail;

performing trend analysis using the audit trail to identify issues with removing the customer private information from specific device types; and

reconfiguring the flashing program to more effectively remove the customer private information for future devices based on the identified issues.

**2**. The method according to claim **1**, wherein the flashing program is accessible through a web browser utilizing a secured connection.

**3**. The method according to claim **1**, wherein the electronic device was previously processed for removal of the customer private information.

**4**. The method according to claim **1**, wherein the network device configures the flashing program in response to the identifying.

**5**. The method according to claim **1**, wherein the flashing comprises:

automatically removing the customer private information from the electronic device.

**6**. The method according to claim **3**, further comprising:

prompting a user through a user interface to take steps to remove portions of the customer private information that were not automatically removed by the flashing program.

**7**. The method according to claim **6**, further comprising:

verifying that the electronic device is clear of the customer private information.

**8**. The method according to claim **7**, further comprising:

documenting a location and type of the customer private information in response to a confirmation from the user to document the customer private information.

**9**. The method according to claim **1**, wherein the flashing program is a master program executed by the network device and an additional flashing program controlled by the master program is executed by the computing device.

**10**. The method of claim **3**, wherein the electronic device is randomly selected from a plurality of electronic devices that were previously processed for removal of the customer private information.

* * * * *